Conway Compress Company *v.* Adkisson.

4-3425

Opinion delivered April 2, 1934.

*R. W. Robins,* for appellants.
*George W. Clark,* for appellee.

McHaney, J. Appellee brought this action in replevin in the justice court against appellants for the recovery of eight bales of cotton, grown in 1932 by Elmer Barrett, on which he held a valid recorded mortgage. From a judgment in his favor, an appeal was prosecuted to the circuit court, where, on a trial to a jury, he recovered judgment for the cotton or its value, $238.

The only question argued on this appeal is the sufficiency of the evidence to support the verdict and judgment, it being contended that the court erred in refusing to direct a requested verdict for appellants. The facts are not in dispute, and are substantially as follows: The cotton was grown by Barrett in 1932. On February 1, 1932, he executed a chattel mortgage to appellee to secure an indebtedness, which was duly filed for record and which remained unpaid and unsatisfied. Sometime after the cotton was harvested and baled, Barrett, without appellee's knowledge, hauled the cotton to Conway for sale, but, being unable at that time to get a satisfactory offer for same, stored it in the Conway Compress Company's warehouse, receiving compress re-

ceipts therefor rather than haul it back to his home, a distance of about 30 miles. On January 23, 1933, Barrett sold the cotton to Austin Johnson, a cotton buyer, at $5.60, with the agreement that Johnson should hold same, and that he, Barrett, should receive any advance in price up to January 26, 1933, and the compress receipts were delivered to Johnson, who, on January 25, sold a part of the cotton to appellant, Cockrill & Company, and a part to appellant, McFadden & Oates, delivering to them the compress receipts. Johnson deposited the proceeds of these sales in the Bank of Conway and drew his check on said bank in favor of Barrett for the purchase price of $5.60, which check was not delivered to Barrett until he returned to Conway on January 28, at which time the Bank of Conway was closed and in the hands of the State Bank Commissioner for liquidation. Barrett refused to accept the check on said insolvent bank, and notified appellee of the situation, who immediately brought this action. Neither Johnson nor appellants had any actual knowledge of appellee's mortgage, nor did they make any inquiry of Barrett regarding same. Barrett had been trading with appellee under a like mortgage for about ten years, during which time he permitted Barrett to sell his cotton at such time and for such price as suited him, but at all previous times the cotton had been paid for and Barrett had accounted to appellee for the proceeds.

Under this state of facts, appellants contend "that, by his admitted practice, extended over a period of about ten years, in permitting Barrett to sell cotton covered by a chattel mortgage at such time and place, and at such price and to such persons as he might deem proper, and when the sale was made to bring him the proceeds of the cotton, the appellee waived his lien on the cotton, and created an agency on the part of Barrett to sell this cotton, which agency he is now estopped to deny."

This case was not tried in the lower court on the theory that appellee had made Barrett his agent for the sale of this or other cotton, and no instruction was requested or given in this regard. An instruction was

asked, and given in part as follows: "And so in this case, if you find from the evidence that Adkisson by his conduct had permitted or acquiesced in the sale of mortgaged cotton by Barrett, then this would amount to a release of his mortgage on such cotton and your verdict should be for the defendant." It is not contended that appellee knew this cotton had been removed from the farm or stored in the compress, or that Barrett had sold it or contemplated selling it. The only custom established by the evidence under previous mortgages was that Barrett would sell his cotton for cash and pay the proceeds to appellee. Here no completed sale was ever consummated between Barrett and Johnson, as the agreement for sale contemplated payment in cash and not by a check on an insolvent bank. Had Barrett received the sale price in cash and failed to account to appellee therefor, a wholly different case would be presented, not now necessary to decide. In 11 C. J. 627 it is said: "If the mortgagor is not the mortgagee's agent for the sale, the mortgagee will not be estopped to assert his rights against a purchaser by any act of the mortgagor, unless the mortgagee has knowledge of the mortgagor's intention and the purchaser relies thereon in ignorance of the truth, and a mortgagee is not estopped to assert his rights against the purchaser where the latter has not paid the purchase money and so is not damaged."

Johnson, although not a party to this action, cannot be damaged, as he has failed to pay the purchase price. Appellants cannot be damaged as they have, or did have, their right of action against Johnson. Neither appellants nor Johnson bought the cotton on the faith of any former custom between appellee and Barrett. Moreover, we are of the opinion that the fact that appellee had permitted Barrett to sell mortgaged cotton in former years is insufficient to establish an implied consent to sell this particular cotton, or a waiver of his lien under the mortgage. Neither Johnson nor appellants had ever bought any cotton from Barrett prior to this sale, and it would be rather far-fetched to hold that they had a right to rely on a course of dealing between mortgagor and

mortgagee, of which they had no knowledge. Appellee's mortgage being of record or on file, both Johnson and appellants were bound to take notice thereof, and bought subject thereto. We have examined the authorities cited by appellants, but do not find them to be of controlling influence here.

Affirmed.